Leon R. McKelvey and Hilda E. McKelvey v. Commissioner. Robert K. Pulsifer and Dorothy Pulsifer v. Commissioner.
McKelvey v. Commissioner
Docket Nos. 52801, 52802.
United States Tax Court
T.C. Memo 1956-70; 1956 Tax Ct. Memo LEXIS 223; 15 T.C.M. (CCH) 358; T.C.M. (RIA) 56070; March 23, 1956
*223 George Craven, Esq., Packard Building, Philadelphia, Pa., for the petitioners. Max J. Hamburger, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined deficiencies in the income tax of the petitioners as follows: Docket No.
Year
Deficiency
Leon R. McKelvey and Hilda E. McKelvey
52801
1949
$11,387.18
1950
578.94
Robert K. Pulsifer and Dorothy Pulsifer
52802
1949
2,202.92
1950
111.22
The principal question for determination is the correctness of respondent's action for each of the years in determining the distributive shares of Leon R. McKelvey and Robert K. Pulsifer of the net income for 1949 of McKelvey Motor Company, a partnership of which they were the members. Findings of Fact Leon R. McKelvey and Hilda E. McKelvey, husband and wife, filed their joint individual income tax returns for 1949 and 1950 with the collector for the first district of New Jersey, Camden, New Jersey. Robert K. Pulsifer and Dorothy Pulsifer, husband and wife, also filed their joint individual income tax returns for 1949 and 1950 with the collector for the first district of *224 New Jersey, Camden, New Jersey. On February 1, 1946, Matthew R. McKelvey, who at that time held a franchise from Buick Motor Company, petitioner Leon R. McKelvey, son of Matthew, and petitioner Robert K. Pulsifer entered into a partnership agreement to operate an automobile sales and service agency in Lakewood, New Jersey, sometimes hereinafter referred to as the agency. The partnership was to continue at the will of the respective parties. The capital of the partnership was $30,000. Matthew held a 36 1/2 per cent interest in the partnership, Leon a 51 per cent interest and Pulsifer a 12 1/2 per cent interest. Each was entitled to share in the profits in those proportions. The partnership agreement provided that if either Leon or Pulsifer desired to withdraw from the partnership, his interest first should be offered for sale to Matthew. Death, bankruptcy or insolvency of either Leon or Pulsifer dissolved and terminated the partnership and his legal representative was required to sell his interest to Matthew. In the case of sale of an interest the value thereof was to be determined on the basis of book value as shown by the partnership books. No value was to be attributed to good *225 will in any event. The agreement further provided that in the event of the death of Matthew, "his legal representatives shall continue to act as partners in this partnership, if his legal representatives so desire." Matthew's contribution to the capital of the partnership included his Buick dealer's franchise for the Lakewood, New Jersey, area, under which he had carried on a Buick sales agency for a number of years prior to the creation of the partnership. He was also the owner of the business premises which he agreed to lease to the partnership. Thereafter and prior to November 9, 1948, the partnership acquired ownership of these premises. Matthew died testate on November 9, 1948. After providing for certain specific bequests, his will provided that the residue of his estate go to his wife, Philomena McKelvey, for her life or until her remarriage, with remainder over to his son, his daughter, and his granddaughter, with full power of sale by the wife of all or any part of the residuary portion of the estate. Respecting Matthew's interest in the abovementioned partnership, his will contained the following: "I hereby authorize and empower my Executrix to carry on and continue *226 my share of the business of the partnership of which I am a member, conducted under the name of McKELVEY MOTOR COMPANY for a period to be determined by my Executrix. I further authorize my Executrix, in her discretion, may offer my share in the aforesaid partnership to the two remaining partners, Leon R. McKelvey and Robert K. Pulsifer. The value of my said share shall be determined by the provisions of the partnership agreement relating to method of ascertaining the value of the respective shares of the partners." Philomena was named executrix in the will and she qualified and served as such. Shortly after Matthew's death the executrix sought to have the partnership business continued with her as a partner to the extent of a 36 1/2 per cent interest in accordance with Matthew's will and the provisions of the partnership agreement. The Buick dealer's franchise held by Matthew and which was employed in the partnership business expired by its terms on October 31, 1948. At a conference between the executrix and Leon and a representative of Buick Motor Company, the representative informed them that Buick would not grant a franchise to any one to be used in the business of a partnership *227 of which an estate was a member. However, following a request made on November 30, 1948, by the executrix, Buick Motor Company agreed to continue in effect, on a temporary basis, the franchise which had been granted to Matthew but which had expired. Although she had been informed that Buick would not grant a franchise for use in the business of a partnership in which an estate was a partner, the executrix proposed that she, Leon and Pulsifer enter into a private arrangement whereby the business would be continued in somewhat the same fashion as it was prior to her husband's death and that under such arrangement she receive 36 1/2 per cent of the profits thereof indefinitely. Her insistence that such an arrangement be entered into despite the information she had received from the representative of Buick engendered some bitterness between her and Leon, who considered her proposal a subterfuge for evading the stand taken by Buick. As a consequence, Leon and Pulsifer began negotiations with her for the purchase of the 36 1/2 per cent interest in the partnership which Matthew had held at the time of his death and then was held by his estate. The differences between the parties were settled *228 by an agreement entered into by them on December 28, 1948. The agreement was conditioned upon Leon's obtaining the Buick franchise for the Lakewood territory and was entered into by the parties in contemplation that, when a franchise was obtained, Leon and Pulsifer would form a new partnership composed solely of themselves for the conduct of a Buick sales and service agency in Lakewood. Pertinent portions of the agreement were as follows: "1. The party of the First Part [the widow as executrix of the estate of Matthew] agrees to sell the interest of the Estate of Matthew R. McKelvey in and to the partnership known as 'McKELVEY MOTOR COMPANY' consisting of a thirty-six and one-half (36 1/2%) per cent interest in the said partnership, to the parties of the Second [Leon] and Third [Pulsifer] Parts, on the terms and for the consideration hereinafter specified. "2. The consideration for the sale of said interest shall be a total cash consideration of FIFTY THOUSAND ($50,000.00) DOLLARS. The said Fifty Thousand Dollars shall be paid TWENTY FIVE THOUSAND ($25,000.00) DOLLARS in cash on signing this Agreement. The said Leon R. McKelvey shall pay SIXTEEN THOUSAND FOUR HUNDRED THIRTY *229 EIGHT and 35/100 ($16,438.35) DOLLARS, and Robert K. Pulsifer shall pay EIGHT THOUSAND FIVE HUNDRED SIXTY ONE and 65/100 ($8,561.65) DOLLARS, making the aforesaid total of Twenty-five Thousand Dollars. "3. As of January 3rd, 1949 the real estate in which the said Buick Sales Agency is conducted at 202 Main Street, Lakewood, New Jersey, shall be conveyed to Philomena McKelvey, Executrix as aforesaid, and she shall in turn, lease the said premises to the said Leon R. McKelvey and Robert K. Pulsifer, (the new partnership) for the term of one year. The lease shall specify a rental of thirty-six and one-half (36 1/2%) per cent of the net profits of the said new partnership realized during the term of said lease. The lease shall provide a further rental consideration in that the lessee will transfer title to the lessor of a Buick Sedan, 1949, Model 56S Dynaflow, to be delivered on or before January 15th, 1949 if available, if not then available the lessee will deliver said car at the earliest time same becomes available. "4. The said Philomena McKelvey, Executrix as aforesaid, agrees that on January 3rd, 1950, she will convey unencumbered title to the above mentioned premises at 202 *230 Main Street, Lakewood, New Jersey to the new partnership above referred to, and that the new partnership will execute a mortgage on the said real estate, to the said Philomena McKelvey, Executrix as aforesaid, in the sum of TWENTY FIVE THOUSAND DOLLARS, which shall be given to secure two bonds, one made by Leon R. McKelvey in the sum of $16,438.35 and another made by Robert K. Pulsifer in the sum of $8,561.65. The said bonds are to bear interest at the rate of six per centum payable semi-annually, and the principal amounts of each bond shall be amortized in sixteen equal semi-annual installments. The said Leon R. McKelvey agrees to give a bond to the said Philomena McKelvey, Executrix as aforesaid, in the principal amount of $16,438.35 payable as aforesaid and secured by the said mortgage, and the said Robert K. Pulsifer agrees to give the said Philomena McKelvey, Executrix as aforesaid, a bond in the principal amount of $8,561.65 secured by said mortgage, and payable according to the terms aforesaid, with privilege of acceleration of payment in mortgagor, except that the source of payment shall be business profits or personal funds. "5. On the signing of this agreement, the said *231 Philomena McKelvey, Executrix as aforesaid, will convey to Robert K. Pulsifer a twelve and one-half (12 1/2%) percent interest in the old partnership's personal property, and to Leon R. McKelvey a twenty-four (24%) per cent interest in the old partnership's personal property." On December 31, 1948, 36 1/2 per cent of the net assets of McKelvey Motor Company, or the percentage interest of Matthew's estate therein, was $41,775.41, based on book value, exclusive of any amount for good will. The executrix contended that the estate's interest had a value in excess of its book value and Leon and Pulsifer also felt that its book value did not represent its fair value. On December 30, 1948, Leon was granted a Buick franchise for the Lakewood territory. On January 3, 1949, he and Pulsifer entered into a new partnership agreement for the conduct of a Buick sales and service agency in the Lakewood territory under the name of McKelvey Motor Company. Leon's interest in the new partnership was 75 per cent and Pulsifer's was 25 per cent and they were to share in the gains and bear the losses of the partnership in those proportions. On January 3, 1949, the executrix executed a bill of sale to *232 Leon reciting the sale to him of a 24 per cent interest "in the partnership property of the old partnership" for $26,759.39 and a bill of sale to Pulsifer reciting the sale to him of a 12 1/2 per cent interest "in the partnership property of the old partnership" for $13,933.11. On January 3, 1949, Leon and Pulsifer executed a deed to the executrix for the premises on which the business of the old partnership had been conducted and on which the business of the new partnership subsequently was conducted. The deed contained the following recital: "It is the intention to vest in the grantee [the executrix] all the right, title and interest of the old partnership consisting of Matthew R. McKelvey, Leon R. McKelvey and Robert K. Pulsifer, trading as McKelvey Motor Company, and all the right, title and interest of the new partnership consisting of Leon R. McKelvey and Robert K. Pulsifer, trading as McKelvey Motor Company, in and to the above described premises." Thereupon on the same day, January 3, 1949, the executrix and Leon and Pulsifer executed an instrument, sometimes hereinafter referred to as a "lease," which recited that she thereby leased the above-mentioned premises for *233 the year, January 1 through December 31, 1949, to McKelvey Motor Company, a partnership consisting of Leon and Pulsifer for "such sum as shall be represented by thirty-six and one-half (36 1/2%) per cent of the net profits of the said lessee during the said term of said year, in the operation of the automobile business now being conducted on the leased premises." The instrument provided for a payment "on account" on July 15, 1949, and for the payment on or before January 15, 1950, of "the balance of the rental." The instrument further provided that the "lessees" should transfer to the executrix title to a "1949 Buick Sedan, Model 56S with Dynaflow, on or before January 15, 1949 if available," otherwise at the earliest time when available. Pursuant to the foregoing instrument and the agreement of December 28, 1948, the new partnership paid the executrix $15,500 on September 19, 1949, and $10,529.23 on February 17, 1950, or a total of $26,029.23. In addition the new partnership during 1949 transferred to the executrix a Buick automobile having a cost basis of $1,990.73, making a total payment to her of $28,019.96. Respecting the $50,000 mentioned in the agreement of December 28, 1948, Leon *234 paid the executrix $16,438.35 on January 3, 1949, and a like amount on January 13, 1950, or a total of $32,876.70. Pulsifer paid her $8,561.65 on January 3, 1949, and a like amount on January 14, 1950, or a total of $17,123.30. On January 3, 1950, the executrix executed a deed to Leon and Pulsifer as "partners trading as McKelvey Motor Company" for the premises covered in the deed of January 3, 1949, from Leon and Pulsifer to her and on which the business of the new partnership was conducted. The deed of January 3, 1950, contained the following recital: "The party of the First Part [the executrix] claims a 365/1000ths' interest in the above described premises and hereby purports to convey the same." Inasmuch as Leon and Pulsifer paid the executrix the amounts of $16,438.35 and $8,561.65, respectively, in January 1950 the bonds and mortgage provided for in the agreement of December 28, 1948, were not executed. The new partnership, in its partnership return of income for 1949, reported net income for the year of $88,734.70. In computing that amount the partnership did not deduct as rent, or as any other item, the $26,029.23 which it paid to the executrix with respect to 36 1/2 per *235 cent of its profits for that year and designated as "rental" in the agreement of December 28, 1948, and in the "lease" of January 3, 1949. Nor did it deduct its cost in the amount of $1,990.73 of the Buick automobile which it transferred to the executrix in 1949. However, in the schedule of the return showing the partners' distributive shares of the net income of $88,734.70 the partnership showed the estate of Matthew R. McKelvey as a partner and its distributive share as $26,029.23, and Leon and Pulsifer as partners with their distributive shares of net income as $45,397.85 and $17,307.62, respectively. In his joint individual income tax return for 1949, Leon reported $45,194 as his distributive share of the partnership net income for that year. Pulsifer in his joint individual income tax return for 1949 reported $17,307.62 as his distributive share of the partnership net income for that year. In determining the deficiencies here involved for 1949, the respondent determined that Leon and Pulsifer with interests of 75 per cent and 25 per cent, respectively, in the new partnership were the only persons entitled to distributive shares of that partnership's net income for 1949, that *236 their respective shares of its net income were 75 per cent and 25 per cent, respectively, and accordingly increased the amounts of the distributive shares reported by them in their individual returns. The payments totaling $50,000 made by Leon and Pulsifer to the executrix in 1949 and 1950 were for the 36 1/2 per cent interest of the estate of Matthew R. McKelvey in the net asests of the old partnership. The payments totaling $28,019.96 made by the new partnership to the executrix in 1949 and 1950 were for her right to become, and to continue indefintely, a member of the old partnership with all the rights of a partner, including those of participating in the conduct and operation of its business and participating in its net income to the extent of 36 1/2 per cent. Opinion The petitioners take the position that the executrix sold the estate's 36 1/2 per cent interest in the net assets of the old partnership to Leon and Pulsifer for $50,000 and that the additional $28,019.96 paid to her by the new partnership was in settlement of her claim that she was entitled to participate in the partnership net income to the extent of 36 1/2 per cent for an indefinite period. They contend *237 that no part of the $28,019.96 was paid to the executrix to purchase any interest of Matthew's estate in the partnership or partnership assets but that the entire amount was paid to her as a 36 1/2 per cent share in the net income of the new partnership for 1949; that therefore such amount was taxable to Matthew's estate; and that it was error for the respondent to treat any part of that amount as being part of Leon's and Pulsifer's distributive shares of the net income of the new partnership and taxable to them as such. The respondent takes the position that both the $50,000 and the $28,019.96 paid to the executrix were for the interest of Matthew's estate in the old partnership; that no part of either of those amounts represented a distribution of the net income, as such, of the new partnership; and that his determination that Leon and Pulsifer were the only persons entitled to distributive shares of the new partnership's net income for 1949 should be sustained. As to the provisions of the agreement of December 28, 1948, respecting the transfer of the business premises to the executrix, her leasing them back to the new partnership, and the rentals provided therefor and the instruments *238 of conveyance and lease with respect thereto, the petitioners, relying on certain testimony to that effect, contend that such provisions and instruments were not intended as a rental arrangement but merely as a means of securing payment of the portion of the $50,000 which was not paid by Leon and Pulsifer until 1950 and for securing payment of the $28,019.96 which was paid by the new partnership. If the foregoing contentions of the petitioners be conceded, there still remains for determination the question as to what the payments of $50,000 and $28,019.96 were for. Under the old partnership agreement and under the will of Matthew the executrix was entitled to act as a partner in the partnership with Leon and Pulsifer if she so desired. Under Matthew's will she was also authorized to sell the estate's interest to Leon and Pulsifer. At first she desired to enter the partnership. But her desire in that respect caused her, Leon and Pulsifer to be faced with the stand of Buick against issuing a franchise for use in a partnership of which an estate was a member. However, Buick agreed to continue in effect on a temporary basis a franchise which had expired prior to Matthew's death. Just *239 how long a period such a continuation would have covered is not disclosed. At any rate the old partnership in addition to selling new and used automobiles also serviced automobiles. While the failure or refusal of Buick to continue in effect or grant a new franchise would have terminated the portion of the partnership business involving the sale of new Buick automobiles, there is nothing to indicate that it would have brought an end to the dealings in used cars and the servicing of cars. But Leon and Pulsifer wished to continue the business with all three operations. As a result they entered into negotiations with the executrix which terminated in a settlement under which they purchased the interest of Matthew's estate in the net assets of the old partnership and also purchased the right of the executrix to became and to continue indefinitely a member of the old partnership with all the rights of a partner. This cleared the way for Leon and Pulsifer alone to form a new partnership which would own and continue the conduct of the business in the manner in which they desired. From the evidence presented we have concluded and found as a fact that the $50,000 paid by Leon and Pulsifer *240 to the executrix was for the interest of the estate of Matthew in the net assets of the old partnership and that the $28,019.96 paid to her by the new partnership was for her right to become, and continue indefinitely, a member of the old partnership with all the rights of a partner, including those of participation in the conduct of its business and participating in its net income. Since the $28,019.96 paid by the new partnership was for the foregoing purpose, the payment represented an amount paid by it for the account of Leon and Pulsifer in their acquisition of an asset with an indefinite duration and was not a distribution by the new partnership of its net income, as such, to the estate of Matthew. Because of factual differences, , and other cases stemming therefrom, relied upon by the petitioners, do not support them. In fact the following rule stated by the Supreme Court in the Bull case is pertinent here and supports the respondent's action herein: "Where the effect of the contract is that the deceased partner's estate shall leave his interest in the business and the surviving partners shall acquire it by payments to the estate, *241 the transaction is a sale, and payments made to the estate are for the account of the survivors. It results that the surviving partners are taxable upon firm profits and the estate is not. * * *" In view of what has been said above, we sustain the respondent's determination that only Leon and Pulsifer were entitled to distributive shares of the net income of the new partnership for 1949. The remaining issues relate to the apportionment to be made of the amount of $8,224.59, representing the difference between the $50,000 paid by Leon and Pulsifer for the interest of Matthew's estate in the net assets of the old partnership, and $41,775.41, representing the book value of such interest. At the hearing the petitioners took the position that the $8,224.59 should be apportioned ratably to the inventory and depreciable assets of the old partnership at the end of 1948. On brief they contend that the amount should be apportioned to the tangible assets (including land) of the old partnership in the proportion that the book value of each bore to their total book value at the end of 1948. Although the petitioners have submitted evidence showing that the executrix, Leon and Pulsifer were of *242 the opinion that the fair value of the assets of the old partnership at the end of 1948 was in excess of their book value and that they regarded $50,000 to be such fair value, the petitioners have submitted no evidence to indicate what values the executrix, Leon and Pulsifer placed on the respective assets or groups of assets, nor have the petitioners submitted any other evidence directed to a proper basis for making an apportionment of the $8,224.59. In this situation and applying the rule in , we hold that $4,250 of the amount in question is to be apportioned to the land, $250 to machinery and equipment, and the remainder, $3,724.59, to the building. Decisions will be entered under Rule 50.